All right, our next case for argument is 24-1265 P Tech v. Arthrex. Mr. Evans, please proceed when you're ready. Thank you, Your Honors. May it please the Court, Robert Evans here for Appellant P Tech. This appeal turns on the definition of the word secure. We submit that it means to fix, anchor, or attach something so that it cannot be moved at its point of attachment. The Board agreed with the first part, but then disagreed with the second part, that it cannot move. And it entered a definition where it believed under its definition that a secure suture could nonetheless slide. We believe that was error. The Fullview case that this Court handed down recently adopted a definition almost identical to ours, not in a medical context, but in the context of electronic equipment. And the question was, were two pieces secure? And the definition they used to define the word secure was almost identical to the definition we proposed to the Board. Fullview's definition included the word firmly. The Board said firmly, added ambiguity, and rejected the word. This Court, both the majority and the dissent in Fullview, nonetheless agreed that firmly was okay. I think one of the more challenging aspects of your case is the specification, column 29. Could you address the language that opposing counsel pointed us to, which explains how you can have a secure elongated member that nonetheless is allowed to slide or move in a particular direction. So that's, you know, it actually says, for example, too secure. But then it goes on to explain that that securing still allows movement. Column 29, which line? Column 29, I'm about line 50 through 56. That seems to me the hardest thing for you to overcome because it seems to be disclosing an embodiment, which is configured to both secure and permit movement. About line 46, it talks about how the elongated member can slide, right? And then at line 54, it says how the elongated member can move when pulled in a particular direction. So how can you have a secure elongated member that can slide and it can be pulled if it can't move? Well, in use, these sutures don't get pulled in both directions. You pull them in a direction to set the anchor so that the suture doesn't slide anymore. If you pull the other direction, though, you might reverse the action of the anchor and allow the anchor to be relieved of the pressure that holds the suture in place. I think in our opening brief at pages 29 to 31, we put in many quotes from the very specification that use the term secure to mean that it can't move at the point of attachment. I direct the court in particular to the bullet point that starts at the bottom of page 29. Insert component may be secure in the passage of base component to secure elongated members with respect to body tissue and or additional devices. Elongate member 106 may be secured with mechanical features, press fitting, screwing, crimping, squeezing, melting, thermal, or ultrasonic, joining, gluing, or any other method of dislocation. Those are all physical joiners that won't allow movement upon secure. Now, if you reverse something so you can unsecure it, well, that's no longer secure. I guess I don't think that there is a dispute that the word secure can include a scenario where there is no movement, but I think the question is does the word secure allow for some sliding? So I think your bullet points are well taken that in many instances in this patent, secure is described in a way that would not permit movement. But the question is do some of these, does this language, for example, expand the definition of secure to include something that can be moved and still be secured? The language Your Honor pointed me to talks about reversing the direction. So if you have something, like if you had a wrench, if you turn the wrench one way, you'll tighten. If you turn it the other way, it will loosen. It doesn't mean you can't secure it with a wrench. If you reverse the direction of the suture and the movement of the suture is what's cinching the suture so that it doesn't move. I don't understand. So look, let's just look at this whole passage. At line 44, it says any portion may be configured to adhere or stick together to resist movement of the elongated member, i.e. suture. That's what you're describing most of the time. But then it says embodiments may be configured to allow elongated member 106 to slide. So I feel like it's saying you could create an embodiment that doesn't allow the elongated member to move, which is what you want the word secure to mean. But then it also says you could also have an embodiment that allows it to slide. But it doesn't say it will be secure if you do that. It just says you can set it up so that it will move. That's true. You're not wrong that that sentence doesn't say secure. But then the next sentence, or maybe it's two down, does, or the next one, embodiments may be configured with two components of a similar material. For example, to secure elongated member 106 when urged together and to allow elongated member 106 to move when pulled in a first direction but not in a second direction. That seems to be consistent with the sliding discussion right above. So I'm not sure. That does use the word secure but also contemplate movement. So I'm not entirely sure I understand what to do with that. Well, I think, which exact line?  When you started talking, I missed your pick-off point. What was the first line? Well, I mean, we started at about line 46, how a portion can resist movement, and then by about line 48 where it can slide in some embodiments. And then the very next sentence actually uses the word secure and talks about an elongated member that can still move. So I'm just reading this paragraph in its entirety, and the word secure is absolutely used at line 53 in a sentence that contemplates movement despite it being secured. So I'm telling you that's my hardest thing. I don't disagree with any of your bullet points necessarily, although I don't think all of them necessarily translate into secure must be fixed and not allow movement. But, you know, even if I grant you those, I'm just worried that the spec has an embodiment that allows movement, and therefore the word securing can mean both. Well, I would submit that the word secure has a general understanding, a generally understood meaning. Well, what is that? How do we know that? I mean, you secure a bike to a tree when you leave the area. That doesn't mean that no portion of anything can be, it precludes movement of any portion of anything. Why is it the normal, that way you normally think of it? Well, when you talk about securing a suture, you're talking about holding two broken parts of a bone together. You're talking about pushing a tendon against a bone to create a healing environment. If you have movement, the healing process doesn't happen. And this statement here, embodiments may be configured with two components of a similar material, but with a different modular specificity. For example, to secure elongate member when urged together, and to allow the elongate member to move when pulled in a first direction, but not in a second direction. It's not saying it's secure in all of those activities. It's saying to secure the member when urged together. But what if they're not urged together? Well, then they're not secure is the implication. So, they can move when not in a first direction, but not in the other direction. So they would be secure only in the second direction. Go ahead, I'm sorry. Okay, just a point we haven't covered yet. I'm having a hard time understanding how you get around the fact that the prior art reference here, stone, also uses the word secure. So does your argument depend on our construing secure in stone in some way that's different than the way we would construe it in the patent? Well, I think for stone, where stone is in that application, perhaps maybe secure was okay. But I don't think the fact that someone uses a word in a particular way binds us, especially when this wasn't a discussion in the prosecution history where the patent owner could have taken a position on it or not. You know, a lot of people use a lot of words a lot of ways, and that doesn't – you can wreck a patent law. But you're coming here and saying this is the ordinary, this is the general way people would understand secure. That's what you said, I think, about four minutes ago. Yes. So are we – therefore, do we have to assume that when stone used the word secure in a different way, it was redefining the word secure? Well – And I didn't see anything there. The board said that it changed the definition of a posita originally proposed by the petitioner because they didn't require an orthopedic surgeon who had actually done this work in this field. And so the posita definition was changed to require an orthopedic surgeon. Both orthopedic surgeons in this case said that something is secure. Their expert said if you tug it, it won't come off. I asked him a question. If you tug something and it's secure, would it come off? He said no. And my expert obviously says that secure means it won't move at the point of attachment. And so the doctors who work in this field have both testified that secure means it doesn't move at the point of attachment, in effect. And so between that and then full view – now, I agree that stone uses sliding anchors. It just does. They're like a – You're saying that stone redefines the ordinary meaning of secure that is your meaning in your claim. Well, stone is more interested in the overall loop that connects all of those islets together. Stone is less directed to specifically what is the connection between the suture and the particular anchor itself. Their expert said that if you pull on a – he talked about if you used one of those anchors in isolation. It was his analogy. And you put a suture through it and you pull on both ends, he said, well, see, it's secure. But in that example, the elongation – I'm sorry, the deformation of the fastener is not what's securing it. It's the fact that you're hanging on to both ends and pulling. But if you let go of either one, it comes out. Well, that's true. That's true of every single one of these. What has to be secured according to the claim, just so I understand? What is it that needs to be secured and to what? Well, you secure the at least one leg of the suture when both the – Securing the at least one leg of the elongate member. This is the part at the bottom where you're using a two-component connector. And you secure the suture between – Is that the elongate member? Yes, the elongate member is the suture. Okay. And in that one, you have a physical structure where the suture presses against an external surface of the second component. And that's a two-component fixation. So the other word fixation is used. That's, again, consistent with the word secure. At the top, you have the other use, inserting a flexible fastener, having a passage into a passage in a first bone portion where an elongate member extends through the fastener such that two legs extend from it. And then you deform the fastener while it's in the bone from a first configuration to a second configuration. And by deforming the fastener while it's in the bone, it secures the fastener. So the fastener is now secured to the bone. And it also secures the elongate member or the suture when tensioning at least one leg of the suture. So you pull on the suture. The fastener is secured into the bone. And the suture is also secured to the fastener. Because, after all, that's what it's connected to. It's the only thing it can be secured to. All right. Well, why don't we save the remainder of your time for rebuttal and hear from Mr. Oliver. Thank you, Your Honor. Good morning, Your Honors. Justin Oliver on behalf of the appellee, Arthrex. May it please the Court. This appeal does revolve around the term secure, including not only P-TECH's incorrect construction, but whether that construction even matters. There are four key points. First, the claims do not require that the elongate member be secured to the fastener, making the construction argument largely irrelevant. Second, even if it did matter, the intrinsic record does not preclude sliding of the elongate member. In fact, it describes embodiments in which sliding takes place even though elements are secure. Third, the stone reference, as has been discussed already, explicitly states that its elongate member is secure to its fastener, such that any argument that the plain and ordinary meaning should distinguish stone simply cannot hold. And finally, even if you set aside all of those issues, the claims state that the securing occurs when tensioning at least one leg of the elongate member. As the records show, P-TECH's own expert acknowledged that when you pull on both legs of stone's elongate member, it would at that moment be secure. The Board independently found that even under P-TECH's claim construction, because of that language of at least one elongate member, meaning one or two, that was an independent reason to find unpatentability, regardless of which claim construction was adopted. For all of those reasons, the decision below should be affirmed. Can I just ask one quick question? Your friend referred to two experts to perform these surgeries, and he said that they both agreed. I don't recall seeing anything in the Board decision discussing that expert testimony. There is expert testimony on both sides. Both of them were surgeons. There was discussion of when you put in a suture, you want the suture to stay where it's supposed to stay. I think the distinction that's being made here is P-TECH's argument seems to be that if you just pull on one leg of the suture alone, that according to it, within stone, it would move and slide. But if you pull on both legs of an elongate member, just like if you put a rope around a pulley and you pull on both legs of the rope, that rope is secure. It's not going to move. Both sides agreed, or both experts agreed, that in that moment when you're pulling on both of them, that it would be secure. And that doesn't matter for the construction, whether you adopt one or the other. And P-TECH's own expert agreed to this. Specifically, P-TECH's expert stated, when asked about this operation of stone, but if you pull on both strands at that moment, it would be secure. His answer at that moment, that's true. That's in the appendix at 2790. So there was agreement that you would have to have the suture stay in place, but the distinction is one leg versus two legs. On page 45 of the appendix, the board addressed this. The board said, look, even if we were to credit P-TECH's construction, that there can be no sliding. We look at stone, and we see that when you pull on both legs of its elongate member, it's not going to go anywhere. It's secure. And under the claim language, P-TECH is focused on the first part of the claim language, which is using the term secure. But the claim says, deforming the fastener from a first configuration to a second configuration to secure the fastener and the elongate member, not to the elongate member, when tensioning at least one leg. P-TECH's argument seems to ignore that at least one leg argument, meaning that you can pull on both legs to secure something. And the board found on page 45 that if you pull on both legs, which is allowed by the claim, stone is secure, such that even if you were to adopt the claim construction, it would still find unpatentability. So this really doesn't solely turn on claim construction, because the board already determined that even if that claim construction were to be adopted, it wouldn't change the outcome. But turning to the actual claim construction, the intrinsic record clearly shows that P-TECH's construction cannot be correct. There was one discussion of the column 29 example of sliding, which is clear that there is a sliding option within this specification. I direct the panel's attention to one other, and that is at appendix 62, column 20 of the patent, starting on line 25. Elongate member 106 may pass, slide, and or be tensioned through all or one portions, all or more, all or one or more portions of fastener 116. So we have explicit language in the specification that talks about sliding. There is nowhere... It's sliding relative to the fastener. Correct. Yep. There is nowhere in the specification that explicitly says, in a secure position, you cannot slide relative to fastener. So what we have is no explicit... Does figure 84 help you also? Yes, it does, and I can turn to that, Your Honor. Figure 84, and I think figure 84 read particularly in light of the specification. Figure 84 is the embodiment that P-TECH itself relies upon, because it is the sole embodiment that shows a deformable fastener 116. With respect to the description there, there are two elongate members in figure 84, 106A and 106B. The specification at column 21, line 20, explicitly states that in the second configuration, or the second configuration obstructs movement of the fastener 116 through the second hole, thereby securing elongate member 106B relative to elongate member 106A. So we have a use there of the term secure, 106A to 106B. If we were to look at figure 84, we'll see that 106A is simply a suture or elongate member looped through a hole in component 126, such that it can slide back and forth. And we can also see, with respect to elongate member 106B, that it also goes through a hole of the component 126, and when pulled in one direction, it's going to get stopped by the fastener. But if it moves in the other direction, it's going to slide. Thus, we can see clearly from figure 84 that there is a sliding relationship between 106A and 106B. Yet the specification says that those two elements are secure together. Where there is a specific embodiment that uses the term secure to describe a sliding relationship, there simply can be no basis in claim construction to preclude sliding from the meaning of the term secure. For that reason, P-TECH's argument fails on the intrinsic record itself. And I'd note also, with respect to 84, one last point, and that's that P-TECH's own expert, when asked about this figure, couldn't determine whether or not the elongate member 106B would actually slide relative to the fastener. When asked about that, he said in the appendix at 394 and 395, I don't know for sure. If the surgeon were to pull in one leg, it's possible that it would deform the device 116 into a second configuration, or it's possible that the suture would slide within the device. I don't know. P-TECH's argument relies upon looking at figure 84's embodiment and saying, ah, I can see clearly that there would be no sliding, therefore I'm going to read no sliding into the specification, and read it from the specification into the claims. But where its own expert in looking at that figure wasn't sure whether sliding would happen or not, there's simply no evidence to support the idea that sliding would be precluded based on the intrinsic record. If we were to even go outside of the intrinsic record and look at the extrinsic record, as has already been noted, Stone explicitly uses the term secure to describe a method of securing the elongate member to a fastener. It calls its elongate member a strand. It calls its fastener anchors. And it specifically says at column 1, line 36, a method for securing a strand to a plurality of anchors. If we were to consider anything in the extrinsic record, which we don't need to because the intrinsic record is clear, it wouldn't be a general purpose dictionary, as P-TECH asked this court to look at, and it wouldn't be a modified version of a definition from the general purpose dictionary as P-TECH has done. It would instead be Stone's usage of the term secure because Stone is within this field describing the exact type of elements at issue here, a suture and a fastener being secured together. Thus, Stone itself is evidence of how a person of ordinary skill in the art would understand the term secure. Okay, thank you, counsel. Mr. Evans has some rebuttals now. The first point I'd like to address is the actual claim language. And if you just pull on two ends of a suture wrapped around a pulley, which I think was the example counsel just gave you, he says it's secure because if you pull on both of them, it can't come off. But the claim language doesn't say it's secure by any means. It says deforming the fastener from a first configuration to a second configuration to secure the fastener and the elongate member. So when you're tugging on it, the tugging is what makes it momentarily secure. The deformation of the fastener is not what makes it secure, and that's what the claim language requires. So that example is not apt. Secondly, he quoted Dr. Pedowitz on this very thing. And Dr. Pedowitz said, yeah, it'd be momentarily secure. But then as we quoted in our opening brief at page 56, and it doesn't matter which tail you pull on, it's still connected to the anchor. That's what I mean by secure. So Dr. Pedowitz is saying looping it over the pulley will momentarily secure it, but if you let go of one thing, it'll come off. That's not secure. It has to be attached. And their expert, Dr. Jordan, said the same thing. If you tug on it, it won't come off. That's what he meant by secure. And so that pulley example is a red herring. It's also using tugging forces instead of deformation forces to secure the suture. What do you say to your friend on the other side that stone is a representation of how a person of ordinary skill in the art would understand the term secure? It's a term he used to describe what he came up with, but it doesn't limit the word secure to what he described as being his embodiment. If you could do that, then you could really mess up an art unit by going through and writing papers that use words in all kinds of directions, and then people would later say, oh, see what the word means. I think every case has to be studied in context. Here, if you look at a brief at page 30, they talk about how the spec talks about how an elongate member may be secured at any point along its length. That means it can be attached at any point along its length. And so the only place where it's been pointed to me is the one initially by Chief Judge Moore where it talks about secure in one direction and it moves in the other. That's like a ratchet. It'll ratchet up, but it won't come back down. Well, it's secure coming back down, but not up. It can still move up. If you look at that example, figure 83, the spec didn't say that suture 106A was secure to element 126. It said it was connected to element 126. And it said that the suture 106B that was attached to deformable fastener 116 was secure with respect to 106A, and that's because if you tug on 106, it'll be secure with respect to the intervening element 126. And so it's not saying that suture 106A is secure. It's clearly not secure. What about column 20, counsel? Column 20, the point of the lines 25 to 30, where it says fastener may include flexible, bendable, deformable configurations for securing elongate member. And then it says fastener or elongate member may pass slide and or be tensioned through one or more portions of the fastener. So you've got an elongated member sliding through the fastener despite the word securing being used. Well, you have to realize what the fastener starts out as, and it starts out as a fairly flat product, and you weave the suture through it. And by tugging on the suture, you deform that fastener, and that motion, that sliding motion, eventually creates enough deformation to secure the suture to the fastener. And I'm trying to find the picture of it. Okay, here we go. If you look at figure, for example, 69 and 70, you see there where you have something that's fairly flat, and then when you pull the suture through it, it deforms it. And by deforming it. Yeah, but look at 67. 67 is slideable. Well, 67 may or may not be slideable depending on the materials. Again, it's what Dr. Tedwitz testified to. If these things are breezy and slimy, they'll slide. If they're not, if they're made of materials that are more tactile. But column 20 is referring to figure 67 to 80, and it expressly says slideable, and it also talks about different, it can be flexible, bendable, deformable, or securing. I don't know. Okay, I mean, I think we have your argument. Why don't we move on to our next case? This case has taken a submission. Thank you, Your Honor.